IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:15-CR-47-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| HECTOR CABRERA-MONTOYA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss the indictment (DE 35). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert B. Jones, Jr. entered a memorandum and recommendation, wherein it is recommended that defendant's motion be denied (the "M&R") (DE 51). Defendant and the government both filed objections to the M&R. The issues raised are ripe for ruling. For the following reasons, the court adopts the M&R and denies defendant's motion.

**BACKGROUND**

The court incorporates herein the facts and background as more particularly set forth in the M&R:

> Defendant is a citizen and national of Mexico, and on an unknown date and at an unknown place, he entered the United States without inspection by an immigration official. (Gov't's Resp. (DE-38) 1). On or about April 11, 1998, U.S. Border Patrol agents in Laredo, Texas first encountered Defendant and granted him a Voluntary Return to Mexico. (Id.). However, at some point thereafter, Defendant reentered the United States without inspection or permission by an immigration official. (Id. at 1-2). Once back in the United States, Defendant ultimately married a U.S. citizen on July 19, 2002, but the citizen never filed a Petition for Alien Relative, Form 1-130, with the U.S. Citizenship and Immigration Service ("USCIS") on Defendant's behalf at any point. (Id. at 2).
>
> On October 3, 2009, Defendant was arrested for the first time in Pitt County, North Carolina for assault on a female. (Id.). Because of this arrest, Immigration and

Customs Enforcement ("ICE") identified Defendant as a criminal alien and lodged an ICE detainer against him. (Id.). Subsequently, Defendant was convicted for the offense of simple assault in violation of N.C. Gen. Stat. § 14-33A and transferred into ICE custody in Cary, North Carolina. (Id.). Shortly thereafter, on October 20, 2009, Defendant posted a $10,000 immigration bond and was released from ICE custody pending the result of his immigration hearing, which had yet to be scheduled. (Id.). As part of posting bond, Defendant informed ICE agents that upon his release he intended to live at a residential address in Greenville, North Carolina. (Id.).

In March of 2010, the immigration court set Defendant's removal hearing for June 15, 2010 in Charlotte, North Carolina. (Id. at 3). Defendant failed to appear at the hearing, and the immigration judge ordered him deported *in absentia* to Mexico pursuant to 8 U.S.C. § 1229(b)(5)(A) (2006). (Id.). However, on June 28, 2010, an immigration officer "noticed that Defendant was in custody at the Pitt County jail" and provided the jail's address to ICE. (Id.). Two days later, the Department of Homeland Security ("DHS") filed a motion to reopen Defendant's immigration case. (Id.). The immigration judge granted the motion to reopen the case on July 1, 2010, and the following day, the immigration court sent notice of the rescheduled hearing to Defendant's last known address, the residential address in Greenville. (Id.). The rescheduled hearing took place on September 28, 2010, and Defendant again failed to appear and was ordered deported to Mexico *in absentia.* (Id. at 3-4).

One week after the immigration hearing, on October 5, 2010, Defendant pleaded guilty and was convicted in Pitt County for the felony offense of assault with a deadly weapon inflicting serious injury. (Id. at 4). As a result, Defendant was sentenced to 20-33 months in prison. (Id.). While incarcerated, Defendant received a warning from ICE for failure to depart, and consequently, when he was released from prison on January 23, 2012, he was transferred back to ICE custody. (Id.). In ICE custody, Defendant was served a warrant for his removal, and ultimately, he was deported to Mexico at Brownsville, Texas on February 7, 2012, based on the September 28, 2010 deportation order entered *in absentia.* (Id.).

At some point after February 2012, Defendant reentered the United States. (Id.). Immigration officials first learned of his reentry on May 6, 2015, when officers in Raleigh, North Carolina received a positive biometric live scan hit indicating that Defendant had been arrested in Pitt County, North Carolina for assault inflicting serious bodily injury, kidnapping, and communicating threats. (Id. at 4-5). Consequently, an ICE detainer was lodged against him for a second time, and on July 7, 2015, a Grand Jury sitting in the Eastern District of North Carolina returned a true bill of indictment alleging as follows:

On or about May 6, 2015, in the Eastern District of North Carolina, the defendant, HECTOR CABRERA-MONTOYA, an alien, was found in the United States after having previously been excluded, deported, and removed from the United States on

2

or about February 7, 2012, at Brownsville, Texas, and not having obtained the express consent of the Attorney General, or his successor, to reapply for admission thereto. All in violation of Title 8, United States Code, Sections 1326(a) and (b)(2).

(DE 3 at 1).

However, before the federal case could proceed, Defendant escaped from the Wilson County jail and was not relocated until November 21, 2023, when he was arrested for assault on a female and communicating threats. (Gov's Resp. (DE 38) at 5). Defendant was then convicted and sentenced to sixty days imprisonment on January 30, 2024, and convicted of assault inflicting serious injury on November 18, 2024 and sentenced to sixty days imprisonment. (Id.). With Defendant back in custody, the federal case was reopened in July of 2024. (See (DE-9)).

Defendant filed the instant motion to dismiss the 2015 indictment on November 27, 2024. (DE 35). In it, Defendant challenges the propriety of the September 28, 2010 deportation order entered *in absentia,* specifically by asserting that he was not provided with the proper notice and opportunity to attend the immigration hearing that occurred on that date. (Def.'s Mot. (DE-35) at 1-5). Due to this alleged lack of due process, Defendant contends that the Government cannot now rely on his 2012 deportation, which was founded on the September 28, 2010 order *in absentia,* to pursue a criminal reentry charge against him. (Id.) The Government responded in opposition to the motion, Defendant replied, and the Government filed a surreply. The court also held an evidentiary hearing on the matter on March 10, 2025, where the undersigned heard argument from counsel and testimony from two Government witnesses, former ICE agent Midoel Ramos and current ICE agent Frederick Tarry. (DE 50). Defendant's arraignment has been continued pending ruling on the motion. (See December 2, 2024 Text Order).

(M&R (DE 51) 1–4 (footnote omitted)).

## COURT'S DISCUSSION

A.   Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v.

3

Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.  Analysis

The magistrate judge thoroughly analyzed the complex legal issues presented by defendant's motion. Each party has lodged objections.

1.  Government's Objection

The government agrees with the conclusion reached in the M&R. It presents only a single objection to the magistrate judge's consideration of a document filed by defendant, and only for purposes of preserving this argument in the event of an appeal by defendant. (See Gov's Obj. (DE 52) 1–2). This court is favorably inclined towards the government's argument that the magistrate judge should not have considered this unsworn document. But because the magistrate judge reached the correct conclusion on the legal issues presented, this is no ground to disturb the M&R's conclusions.

2.  Defendant's Objections

Defendant lodges three objections. All three are asserted in conclusory fashion. (See Def's Objs. (DE 53) 1).

First, defendant summarily challenges the M&R's conclusion that there was no reasonable probability of defendant receiving either a pre- or post-conclusion voluntary departure. As noted, all of defendant's objections are asserted in summary form. Defendant's first objection, in particular, merely objects to a conclusion and cites 12 pages of the M&R, without any specific argument. (Id.). This comes close to a general objection on which the court need not conduct de

novo review.  See Orpiano, 687 F.2d at 47.  However, these objections just barely clear the boundary.  See Elijah v. Dunbar, 66 F.4th 454, 460–61 (4th Cir. 2023) (emphasizing leniency of what constitutes a sufficiently specific objection).  The court therefore conducts de novo review.

Nonetheless, even under de novo review this objection fails.  The magistrate judge meticulously reviewed the pertinent statutes, authority from the Fourth Circuit and immigration tribunals, and the evidence the magistrate judge received at the hearing.  (See M&R 29–41).  On these bases, the magistrate judge logically and correctly concluded that defendant likely would not have been granted pre-conclusion voluntary departure, because 1) the government would have presented evidence of the felony charge pending in state court against defendant at the time of the hearing; and 2) defendant's subsequent guilty plea and imprisonment on that charge would have rendered him unable to comply with voluntary departure deadlines.  See 8 U.S.C. § 1229c(a)(2)(A) (requiring an alien granted pre-conclusion voluntary departure to leave the country within 120 days); In re Arguelles-Campos, 22 I. & N. Dec. 811, 817 (BIA 1999) (permitting immigration judges to consider the existence, seriousness, and recency of any criminal record, and other evidence of bad character, in making discretionary decision to grant or withhold pre-conclusion voluntary departure).

The magistrate judge further accurately concluded that defendant's guilty plea to that felony charge rendered him ineligible for post-conclusion voluntary departure.  See 8 U.S.C. § 1229c(b)(1)(B) (requiring an alien to demonstrate good moral character for five years preceding an application for post-conclusion voluntary departure).  Defendant's first objection is overruled.

Defendant next objects to the magistrate judge's conclusion that there was no reasonable probability of defendant adjusting his immigration status through his marriage to a United States citizen.  This objection is, again, a summary statement against a conclusion with no specific

5

argument advanced.  However, even under de novo review it fails.  The magistrate judge thoroughly examined defendant's circumstances during the relevant time periods and how said circumstances interacted with immigration law.  On this basis, the magistrate judge concluded that 1) the need for defendant's wife to file an I-130 petition for him; 2) the questionable legitimacy of that marriage; 3) defendant's need to leave the country to apply for a status adjustment; and 4) defendant's custodial status during most of the relevant time period, together formed a chain of contingencies rendering it exceedingly unlikely that defendant could have successfully applied for a status adjustment in connection with his marriage.  See 8 U.S.C. § 1255 (prohibiting status adjustment for aliens unlawfully present in the United States); id. § 1202(a) (requiring an alien to exit the country and apply for an immigrant visa to receive a status adjustment); id. § 1182(a)(9)(B)(i) (prohibiting status adjustment for an alien who had been unlawfully present in the United States for more than one year); Lovo v. Miller, 107 F.4th 199, 202–03 (4th Cir. 2024) (summarizing these interlaced statutes and the resulting "conundrum").  On de novo review, the undersigned agrees.  This objection is overruled.

Finally, defendant objects to the magistrate judge's consideration of a sur-reply the government filed without leave of court.  This court agrees that this filing was improper.  However, the M&R's only consideration of, or citation to, the sur-reply is to note certain allegations about defendant's marriage made therein, which the M&R immediately deemed irrelevant to the motion because they post-dated the relevant events and decisions.  (See M&R at 25–26).  The unauthorized sur-reply provides no basis to alter or reject the magistrate judge's conclusions.

## CONCLUSION

Based on the foregoing, the court DENIES defendant's motion to dismiss the indictment (DE 35).

6

Case 4:15-cr-00047-FL    Document 54    Filed 05/13/25    Page 6 of 7

SO ORDERED, this the 13th day of May, 2025.

                                                    LOUISE W. FLANAGAN
                                                    United States District Judge